**UNITED STATES DISTRICT COURT**
**EASTERN DISRICT OF NEW YORK**
-----------------------------------------------------------X

DAWN AMADOR,

                         Plaintiff,                    Civil Case No:

  -Against-                                     **COMPLAINT**

THE STATEN ISLAND ECONOMIC DEVELOPMENT
CORPORATION, STEVEN GRILLO (individually),
GINA GUTMAN (individually), and CESAR CLARO
(individually),

                                  Defendants.

-----------------------------------------------------------X

Plaintiff DAWN AMADOR (hereinafter referred to as "Ms. Amador"), by and through her attorneys, DEREK SMITH LAW GROUP, PLLC, hereby complains of Defendants THE STATEN ISLAND ECONOMIC DEVELOPMENT CORPORATION (hereinafter referred to as "DEFENDANT"), STEVEN GRILLO (individually), GINA GUTMAN (individually,) and CESAR CLARO (individually), upon information and belief as follows:

**NATURE OF CASE**

1. This action arises out of the unlawful discrimination, *inter alia*, sex/gender, sexual orientation, and disability association, together with being subjected to a hostile work environment, retaliation, and wrongful termination by Defendants against Ms. Amador.

2. Ms. Amador complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"), the Americans with Disabilities Act of 1990 ("ADA"), the New York State Human Rights Law, New York Executive Law U.S.C. §§

2000e to 2000e-17, the Administrative Code of the City of New York, and based upon supplemental jurisdiction pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966) and 28 U.S.C. § 136 seeking declaratory and injunctive relief and damages to redress the injuries Ms. Amador has suffered as a result of gender discrimination, disability discrimination, hostile work environment, wrongful termination, retaliation, and sexual harassment by Defendants.

## JURISDICTION AND VENUE

3. This Court has jurisdiction based on 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

4. Jurisdiction of this action is conferred upon this Court as this case involves a Federal Question under Title VII. This Court also has jurisdiction pursuant to 29 U.S.C. §2617, 28 U.S.C. §§1331, 1343 and pendent jurisdiction thereto.

5. Venue is proper in this district pursuant to 20 U.S.C. §1391(b) because Defendant is located in this judicial district and a substantial part of the events which give rise to the claims herein occurred within the Eastern District of New York.

## PARTIES

6. At all times material, Plaintiff DAWN AMADOR (hereinafter referred to as "Ms. Amador") is an individual homosexual female. She has a son suffering from fabral seizures who resides in the State of New York, Richmond County.

7. At all times material, STATEN ISLAND ECONOMIC DEVELOPMENT CORPORATION (hereinafter referred to as "DEFENDANT") was and is a not-for-profit corporation duly authorized to do business in the State of New York.

8. At all times material, Defendant's employee, First Vice President STEVEN

GRILLO (hereinafter referred to as "VP GRILLO"), was and is an individual heterosexual male residing in the State of New York.

9. At all times material, Defendant's employee, Senior Vice President GINA GUTMAN (hereinafter referred to as "VP GUTMAN"), was and is an individual heterosexual female residing in the State of New York.

10. At all times material, Defendant's employee, President and CEO CESAR CLARO (hereinafter referred to as "CEO CLARO"), was and is a heterosexual male residing in the State of New York.

11. At all material times, VP GRILLO, VP GUTMAN, and CEO CLARO held supervisory authority over Ms. Amador.

## MATERIAL FACTS

12. On or about March 1, 2018, Defendant hired Ms. Amador as Staten Island Works Manager. Ms. Amador was assigned to work at 900 South Avenue, Staten Island, 10314. As part of her duties and responsibilities, Ms. Amador, canvassed industrial areas to see if workers were needed, gathered resumes for skilled workers to connect with local businesses, and attended job fairs.

13. At all times material, Ms. Amador was a hard-working employee who produced quality work for Defendant. However, during her employment with Defendant, Ms. Amador experienced sex/gender and sexual orientation discrimination, and discrimination on the basis of her son's disability.

14. By way of example, on her first day of employment, VP GRILLO told Amador she wanted to "get to know her" and started asking her questions about her family. In this conversation, Ms. Amador revealed that she lived with her girlfriend.

15. VP GRILLO responded, "Girlfriend-girlfriend? Oh, wow, you don't look like it," and "I didn't expect that."

16. From the moment she revealed her sexual orientation, until the day Defendants unlawfully terminated Ms. Amador, she was questioned daily about her relationship. Frequently, Defendant's employees entered her office, picked up a photo of Ms. Amador's girlfriend that she kept on her desk and asked personal questions about their relationship. These employees asked Ms. Amador invasive questions; questions that were not directed at similarly situated heterosexual employees. Due to this treatment, Ms. Amador felt singled-out and isolated.

17. Further, Ms. Amador was subjected to additional gender discrimination when VP GRILLO stated to Ms. Amador, "don't back up too much," as he looked directly at his private region during a group photo shoot. Ms. Amador understood VP GRILLO to be making a crude sexual remark motivated by her gender and sexual orientation.

18. Moreover, in or around March 2018, VP GRILLO told Ms. Amador, "You smell good. What're you wearing?" He further told Ms. Amador, "You remind me of my wife" and "You smell like her." These comments made Ms. Amador feel extremely uncomfortable.

19. On another occasion, VP GUTMAN complained to Ms. Amador about "flamboyant hoopla" that "gays" cause when they hear about a wedding. Ms. Amador understood VP GUTMAN comments to be derogatory about homosexuals.

20. In or about late March 2018, during a lunch with Ms. Amador, VP GRILLO, VP GUTMAN, and CEO CLARO, VP GUTMAN stated that, "I told my daughter that if she ever got abducted, bite his dick off."

21. A few days later, Ms. Amador told VP GRILLO she was offended by the language used in the above mentioned conversation.

22. VP GRILLO told Ms. Amador that VP GUTMAN is Human Resources, so there is no one to whom she can complain. He further said he would "take note" of it, but that Ms. Amador should relax and "take things with a grain of salt."

23. The next day, VP GUTMAN entered the building, walked straight into Ms. Amador's office and asked Ms. Amador, "I meant to ask you – who is that?"

24. Ms. Amador responded, "My girlfriend."

25. VP GUTMAN asked, "What's her name?

26. Ms. Amador responded, "Toni."

27. VP GUTMAN said, "Okay," and walked out without another word.

28. On or about April 4, 2018, Ms. Amador was in a meeting with VP GRILLO and Defendant's employee Robert Simone.

29. VP GRILLO asked Ms. Amador, "Dawn, ask Robert how his dad says his family name."

30. Ms. Amador said, "no," clearly displaying her discomfort.

31. VP GRILLO said, "Robert, tell her."

32. Robert said, "I'd rather not."

33. VP GRILLO insisted, "Tell her."

34. Robert replied, "Semen." This caused VP GRILLO to laugh. Ms. Amador, offended at the conversation, objected and asked, "Are we done here?"

35. Then, in or around April of 2018, CEO CLARO walked through the hallway of Defendant's office with one hand in the air, wrist flipped, and another hand on his hip while stating, "I could be gay, look at me, steer me to the parade. All I need is some short shorts like Richard Simmons and I could be gay."

36. Ms. Amador was offended by these comments and conduct, especially as they were performed right in front of her office. In a show of disgust and to register her objection to CEO CLARO's actions, Plaintiff immediately closed the door.

37. Ms. Amador was subjected to a hostile work environment due to her gender/sexual orientation, as heterosexual employees were not subjected to similar derogatory comments or conduct by Defendant's supervisory employees.

38. In or around May of 2018, Ms. Amador was speaking with VP GRILLO when he told Amador, "Did you make this dress? It's a nice fit on you. Looks good."

39. VP GRILLO nearly continued but stated, "I'm gonna curb my tongue before I get myself in trouble because you're a triple threat."

40. Ms. Amador asked VP GRILLO to clarify his comments.

41. In response, VP GRILLO said, "Latina, woman, lesbian – triple threat."

42. In or around early May of 2018, Ms. Amador was assigned by Defendants to gather resumes at the Food Pantry. The Food Pantry serves a high volume of elderly and sickly people.

43. After the assignment to the Food Pantry, Ms. Amador came down with the flu, strep throat, and a fever.

44. Fevers, in particular, are problematic for Ms. Amador, as her son suffers from fabral seizures which are induced by fevers. In fact, when Ms. Amador or anyone else in her family has a fever, her son is sent to his father or grandfather's house because his exposure to said fever can result in traumatic seizures.

45. Defendants were aware of Ms. Amador's son's condition, because Ms. Amador had previously disclosed her son's disability to VP GRILLO.

46. On or about May 15, 2018, Ms. Amador messaged VP GRILLO explaining that

because of her son's disability her presence at the Food Pantry could endanger his health.

47. VP GRILLO acknowledged there were sick individuals at the Food Pantry, but insisted that Ms. Amador return. Ms. Amador objected because this assignment unreasonably put her son at risk.

48. The next day, on or about May 16, 2018, Ms. Amador was in her office, still recovering from being sick.

49. VP GRILLO entered Ms. Amador's office and said, "Damn, you look terrible."

50. VP GRILLO then exited the office wherein Ms. Amador heard him say, "Tramp."

51. Later that evening, Ms. Amador received a phone call from a colleague who had witnessed VP GRILLO leave Amador's office.

52. Ms. Amador was informed that VP GRILLO, upon exiting her office, turned around and looked at the door and said, "Lady and the Tramp."

53. VP GRILLO then went over to Defendant's employee CHRIS and said, "Lady and the Tramp, and the Tramp has to go!"

54. CHRIS responded, "She is going to go, just need to talk to Megan and then the Tramp is out of here."

55. The very next day, on or about May 17, 2018, Ms. Amador met with Defendant's employees VP GRILLO and VP GUTMAN and was told, "We've had a lot of internal conversations about whether you fit in here and we decided you don't."

56. Ms. Amador was unlawfully terminated on May 17, 2018 because she was associated with her son's disability and because of her complaints and objections to gender and sexual orientation discrimination.

57. As a result of Defendants' unlawful and discriminatory actions, Ms. Amador has

endured unwarranted hardships and irreparable damage to her professional reputation.

58. As a result of the acts and conduct complained of herein, Ms. Amador has suffered and will suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation, which such employment entails. Ms. Amador has suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

59. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Ms. Amador demands Punitive Damages against Defendants.

60. The above are just some examples of the unlawful, discriminatory, and retaliatory conduct to which Defendants subjected Ms. Amador.

61. Defendants' conduct constitutes a continuing violation.

62. Defendants' conduct was outrageous in character and extreme in degree as to go beyond all possible bounds of decency.

63. Defendants' breach of their duties to Ms. Amador caused Ms. Amador to suffer numerous injuries as set forth herein.

## CAUSES OF ACTION

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION
## UNDER TITLE VII
## (Not against Individual Defendants)

64. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint.

65. Title VII states in relevant part as follows:

"(a) Employer practices: It shall be an unlawful employment practice for an employer: (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

66. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the unlawful employment practices of the above-named Defendants. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's sex.

67. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the unlawful employment practices of the above-named Defendants. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's sex.

## AS A SECOND CAUSE OF ACTION
## FOR RETALIATION UNDER

## TITLE VII
### (Not Against Individual Defendants)

68. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

69. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

70. Defendants engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e *et seq.,* by retaliating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of Defendants.

71. Defendants violated the above and Plaintiffs suffered numerous damages as a result.

## AS A THIRD CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## NEW YORK STATE LAW
### (Against All Defendants)

72. Plaintiff repeats, and realleges each and every allegation made in the above paragraphs of this complaint.

73. Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual

10

in compensation or in terms, conditions or privileges of employment."

74. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of her gender and sexual orientation, harassing Plaintiff, and causing a hostile work environment.

75. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

76. Defendants violated the above and Plaintiffs suffered numerous damages as a result.

### AS A FOURTH CAUSE OF ACTION
### FOR AIDING & ABETTING UNDER
### NEW YORK STATE LAW
### (Against All Defendants)

87. Plaintiff repeats, and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

88. New York State Executive Law §296(6) further provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

89. Defendants engaged in an unlawful discriminatory practice by aiding, abetting, compelling, and/or coercing the discriminatory behavior as stated herein.

**AS A FIFTH CAUSE OF ACTION
FOR RETALIATION UNDER
NEW YORK STATE LAW
(Against All Defendants)**

90. Plaintiff repeats, and realleges each and every allegation made in the above paragraphs of this complaint.

91. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

92. Defendants engaged in an unlawful discriminatory practice by retaliating against Plaintiff.

**AS AN SIXTH CAUSE OF ACTION
FOR DISCRIMINATION UNDER
THE NEW YORK CITY ADMINISTRATIVE CODE
(Against All Defendants)**

93. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

94. The Administrative Code of City of NY §8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, military status, sexual orientation or alienate or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

95. Defendants engaged in an unlawful discriminatory practice in violation of New

York City Administrative Code Title 8, by creating and maintaining discriminatory working conditions, unlawful termination and a hostile work environment, retaliating and otherwise discriminating against Plaintiff because of her sex/gender and sexual orientation.

<b><u>AS A SEVENTH CAUSE OF ACTION FOR RETALIATION<br>UNDER THE NEW YORK CITY ADMINISTRATIVE CODE</u><br>(Against All Defendants)</b>

96. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

97. The New York City Administrative Code Title 8, §8-107(1) (e) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter. . . "

98. Each of the Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Tide 8, §8-107(1) (e) by discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

99. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York State City Administrative Code Title 8.

100. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS AN EIGTH CAUSE OF ACTION
## FOR AIDING AND ABETTING UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE
### (Against All Defendants)

101. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

102. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

103. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

## AS A NINTH CAUSE OF ACTION
## FOR INTERFERENCE UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### (Against All Defendants)

104. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint with the same force and effect as if fully set forth herein.

105. New York City Administrative Code Title 8-107(19) Interference with protected rights states, in relevant part: It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section.

106. Defendants violated the section cited herein as set forth.

107.   Defendants violated the above and Plaintiff suffered damages as a result.

### AS A TENTH CAUSE OF ACTION FOR SUPERVISOR LIABILITY UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### (Against All Defendants)

108.   Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint with the same force and effect as if fully set forth herein.

109.   New York City Administrative Code Title 8-107(13) entitled Employer liability for discriminatory conduct by employee, agent or independent contractor provides:

   a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

   b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

   c. The employee or agent exercised managerial or supervisory responsibility; or

   d. The employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

   e. The employer should have known of the employee's or agents discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

110.   Defendants violated the above and Plaintiff suffered numerous damages as a result.

### AS AN ELEVENTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER
### THE AMERICANS WITH DISABILITIES ACT
### (Not Against Individual Defendants)

111. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

112. Plaintiff claims Defendants violated Title I of the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (ADA), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

113. SEC. 12112. [Section 102] specifically states "(a) General Rule. - No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

114. Section 102 continues: "As used in subsection (a) of this section, the term 'discriminate against a qualified individual on the basis of disability' includes … (4) excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association."

115. Defendants violated the section cited herein by creating and maintaining discriminatory working conditions, and otherwise discriminating and retaliating against the Plaintiff because of her son's disability and Plaintiff's known relationship and association with her son.

116. Defendants violated the above and Plaintiff suffered, and continues to suffer, numerous damages as a result.

# AS A TWELFTH CAUSE OF ACTION
# FOR RETALIATION UNDER
# THE AMERICANS WITH DISABILITIES ACT
# (Not Against Individual Defendants)

117. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

118. SEC. 12203. [Section 503] states, "(a) Retaliation. - No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

119. Plaintiff opposed Defendants' actions, and Defendants violated the section cited herein by creating and maintaining discriminatory working conditions, and otherwise discriminating and retaliating against the Plaintiff because of her son's disability.

120. Defendants violated the above and Plaintiff suffered damages as a result.

## JURY DEMAND

121. Plaintiff demands a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff demands judgment against all Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated:   New York, New York
        12/28/18

                              DEREK SMITH LAW GROUP, PLLC
                              *Attorneys for Plaintiff*

        By: _____/s/_____
              Kyle Bruno, Esq.
              One Penn Plaza, Suite 4905
              New York, New York 10119
              (212) 587-0760